IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-43-D

| | | |
|---|---|---|
| WINYAH RIVERS ALLIANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| ACTIVE ENERGY RENEWABLE | ) | |
| POWER, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

On March 10, 2021, Winyah Rivers Alliance ("Winyah" or "plaintiff") filed suit against Active Energy Renewable Power, LLC ("Active Energy") and Lumberton Energy Holdings, LLC ("Lumberton Energy") (collectively, "defendants") alleging violations of the Clean Water Act, 33 U.S.C. §§ 1251 et seq. [D.E. 1]. On May 3, 2021, defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) and filed a memorandum in support [D.E. 11, 12]. On May 24, 2021, Winyah responded in opposition [D.E. 13]. On June 7, 2021, defendants replied [D.E. 14]. On June 14, 2021, Winyah filed a motion to strike and, in the alternative, a motion to file a surreply, based on new arguments in defendants' reply brief [D.E. 15, 16]. Defendants oppose Winyah's motion to strike [D.E. 17]. As explained below, the court denies Winyah's motion to strike and denies defendants' motion to dismiss.

I.

As for defendant's motion under Rule 12(b)(1), defendants argue that Winyah lacks standing and that Winyah's claims are not ripe. See [D.E. 12] 28–29; [D.E. 14] 5–10.[1] A motion to dismiss

---

[1] The court denies Winyah's motion to strike [D.E. 15]. Defendants' ripeness argument implicates the court's subject-matter jurisdiction, and defendants may properly raise that argument.

under Rule 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). When considering a Rule 12(b)(1) motion, the "court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005) (quotation omitted); see Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff must establish that this court has subject-matter jurisdiction over his claims. See, e.g., Steel Co., 523 U.S. at 103–04; Evans, 166 F.3d at 647; Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged [in the complaint and any additional materials]." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A.

Defendants argue Winyah lacks standing. Winyah has standing to sue on behalf of its members so long as "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Friends of

---

See, e.g., Kontrick v. Ryan, 540 U.S. 443, 455 (2004); South Carolina v. United States, 912 F.3d 720, 730 (4th Cir. 2019). And even if the "minor modification" argument is new, motions to strike are disfavored. See Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001). Thus, the court denies the motion to strike. Nonetheless, because the court rejects defendants' arguments, the court denies as moot Winyah's motion to file a surreply.

the Earth, Inc. v. Laidlaw Env't Srvs. (TOC), Inc., 528 U.S. 167, 181 (2000); see Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). Winyah is an environmental nonprofit organization, and the interests at stake in this lawsuit are germane to its purpose. See Compl. [D.E. 1] ¶¶ 17–18. Moreover, the claims asserted and relief requested do not require the participation of Winyah's individual members. See id. at 27. Thus, Winyah has standing if its members: (1) "have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision" from the court. Chambers Med. Techs. of S.C., Inc. v. Bryant, 52 F.3d 1252, 1265 (4th Cir. 1995) (alterations omitted) (quoting Lujan v. Def. of Wildlife, 504 U.S. 555, 560–61 (1992)); see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016); Laidlaw, 528 U.S. at 180–8; Sierra Club v. U.S. Dep't of Interior, 899 F.3d 260, 282–83 (4th Cir. 2018).

In environmental litigation, "the standing requirements are not onerous." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003); see Beck v. McDonald, 848 F.3d 262, 274 n.5 (4th Cir. 2017). Plaintiffs allege an "injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity." Sierra Club, 899 F.3d at 283 (quotation omitted); see Laidlaw, 528 U.S. at 183; Sierra Club v. Morton, 405 U.S. 727, 734–35 (1972); Am. Canoe Ass'n, 326 F.3d at 517. Plaintiffs demonstrate traceability by showing the challenged actions are partly responsible for their alleged injury in fact. See Sierra Club, 899 F.3d at 283; Libertarian Party of Va. v. Judd, 718 F.3d 308, 316

3

(4th Cir. 2013) (stating the challenged action must be "at least in part responsible" for the injury). The challenged action need not be "the sole or even immediate cause of" the injury. Sierra Club, 899 F.3d at 284; see Md. Shall Issue, Inc. v. Hogan, 971 F.3d 199, 212 (4th Cir. 2020); Libertarian Party of Va., 718 F.3d at 515–16. And plaintiffs show redressability by demonstrating a favorable judicial decision will likely redress their injury. See Laidlaw, 528 U.S. at 181; Sierra Club, 899 F.3d at 284. Plaintiffs "need not show that a favorable decision will relieve their every injury. Instead, [they] need only show that they personally would benefit in a tangible way from the court's intervention." Sierra Club, 899 F.3d at 284 (cleaned up); see Larson v. Valente, 456 U.S. 228, 242–44, 243 n.15 (1982); Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 162 (4th Cir. 2000) (en banc).

Winyah has standing. As for injury-in-fact, Winyah submitted the affidavits of the organization's members describing how defendants' alleged discharges of pollutants negatively affect the Lumber River's and Jacob Branch's aesthetic, recreational, and economic value to them, particularly for fishing (i.e., availability of fish to catch and health concerns of eating fish from a polluted river), boating, and swimming. See [D.E. 13-2 through 13-6]. Winyah also plausibly alleges that defendants' NPDES permit required it to file a renewal application after acquiring the site and before resuming any discharges from the site into the Lumber River and Jacob Branch. See [D.E. 1] ¶¶ 4–10, 100–12; Cf. Spokeo, 578 U.S. at 341–42; Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 345–46 (4th Cir. 2017). Assuming without deciding Winyah is correct, Winyah's members could have used the public information from the renewal application and the subsequent review process to make more informed choices about whether and how to swim, fish, and boat on the Lumber River and Jacob Branch. See, e.g., [D.E. 13-3] ¶¶ 21–24; [D.E. 13-4] ¶¶ 11–15; [D.E. 13-5] ¶ 8; cf. Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n, 389 F.3d 536, 542

4

(6th Cir. 2004). Accordingly, Winyah has demonstrated injury in fact.

As for traceability, Winyah's members describe concerns contributing to their injuries in fact particularized not only to the rivers in which defendants are allegedly discharging but also to specific parts of those rivers close to where defendants allegedly discharge pollutants. See, e.g., [D.E. 13-2] ¶ 11; [D.E. 13-3] ¶ 20; Compl. ¶¶ 116–37; see also Am. Canoe Ass'n, 326 F.3d at 520 ("In order to satisfy the traceability requirement, '[r]ather than pinpointing the origins of particular molecules, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged' in the specific geographic area of concern." (alteration in original) (quotation omitted)); Gaston Copper, 204 F.3d at 161; NRDC v. Watkins, 954 F.2d 974, 980 (4th Cir. 1992); N.C. Coastal Fisheries Reform Grp. v. Capt. Gaston LLC, No. 4:20-CV-151-FL, 2021 WL 4254856, at *7 (E.D.N.C. Sept. 17, 2021), appeal docketed, No. 21-2184 (4th Cir. Oct. 20, 2021). As for the informational injury, that injury is directly traceable to defendants' alleged failure properly to file a renewal application for its NPDES permit. Thus, Winyah has demonstrated traceability, even if defendants' activities are not the sole cause of Winyah's members' injuries. See Sierra Club, 899 F.3d at 283–84.

Alternatively, to the extent Winyah does not clearly satisfy traceability, it is because the causation question involves some of the factual disputes between the parties. Where, as here, "the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous." Kerns, 585 F.3d at 193. Moreover, Winyah's jurisdictional allegations are not clearly immaterial, wholly unsubstantial, or frivolous. Winyah has shown sufficient causation at this stage to demonstrate standing.

As for redressability, Winyah has shown that an order from this court granting all or part of

5

the relief Winyah seeks would help protect, and possibly restore, their members' aesthetic, recreational, and economic interests in the Lumber River and Jacob Branch and their informational interests in the permitting process. Winyah primarily seeks injunctive and declaratory relief. See Compl. at 27. As for injunctive relief, Winyah has shown redressability because it plausibly alleged "a continuing violation or the imminence of a future violation of the" Clean Water Act. Steel Co., 523 U.S. at 108. As for declaratory relief, Winyah has shown redressability because a declaratory judgment would settle the propriety of defendants' alleged unlawful discharges that contribute to Winyah's members' injuries. See Hewitt v. Helms, 482 U.S. 755, 761 (1987); see, e.g., Capt. Gaston LLC, 2021 WL 4254856, at *7. Winyah also seeks civil penalties under the Clean Water Act for defendants' alleged violations. See 33 U.S.C. § 1365(a); Compl. at 27. A civil sanction that stops defendants' alleged unlawful conduct effectively redresses an injury. See Laidlaw, 528 U.S. at 185–86. Thus, Winyah has shown its members "personally would benefit in a tangible way from the court's intervention." Sierra Club, 899 F.3d at 284 (quotation omitted); Gaston Copper, 204 F.3d at 162. Even if the relief Winyah seeks would only give it partial redress for its members' injuries, partial redress suffices for standing. See Uzuegbunam v. Preczewski, 141 S. Ct. 792, 801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement." (quotation omitted)). In short, Winyah has standing to sue on behalf of its members. Accordingly, the court denies defendants' motion to dismiss under Rule 12(b)(1) for lack of standing.

B.

Alternatively, defendants argue Winyah's claims are not ripe. "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" Miller v. Brown, 462 F.3d 312, 318–19 (4th Cir. 2006) (quoting Rescue Army v. Mun. Ct. of L.A., 331 U.S. 549, 584 (1947)); see Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d

6

262, 269–70 (4th Cir. 2013); Lansdowne on the Potomac Homeowners Ass'n v. OpenBand at Lansdowne, LLC, 713 F.3d 187, 198 (4th Cir. 2013). The ripeness doctrine requires "courts to avoid taking premature judicial action, thereby preventing them from becoming entangled in abstract disagreements." Scoggins, 718 F.3d at 270 (quotation omitted). In considering whether a claim is ripe, courts balance "the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Miller, 462 F.3d at 319 (quotation omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998) (quotations omitted); see Scoggins, 718 F.3d at 270; Miller, 462 F.3d at 319. "The hardship prong is measured by the immediacy of the threat and the burden imposed on the plaintiff." Lansdowne, 713 F.3d at 199 (quotation and alteration omitted). "Where an injury is contingent upon a decision to be made by a third party that has not yet acted, it is not ripe as the subject of decision in a federal court." Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013); see, e.g., Franks v. Ross, 313 F.3d 184, 195 (4th Cir. 2002).

Winyah's claim is ripe. Winyah's claims are not contingent upon future events but rather allege ongoing violations of the Clean Water Act. The claims involve the interpretation and application of an NPDES permit that defendants already have. Winyah's claims are not contingent upon defendants receiving a future permit.[2] Courts interpret NPDES permits according to the ordinary principles of contract interpretation. See Ohio Valley Env't Coal. v. Fola Coal Co., 845

---

[2] Defendants respond that Winyah's claims are not ripe until the North Carolina Department of Environmental Quality processes Almac American Knits's renewal application, which defendants assumed when they acquired the site. But Winyah's claims are not premised on the status of the renewal application. Rather, Winyah relies on the terms of the modified NPDES permit that defendants cite to justify their alleged discharges. Defendants received that modified permit after Almac American Knits submitted the renewal application. Compare [D.E. 1-3] with [D.E. 12-2].

7

F.3d 133, 138–39 (4th Cir. 2017); Piney Run Pres. Ass'n v. Cnty. Com'rs, 268 F.3d 255, 269 (4th Cir. 2001). Thus, the issues are fit for judicial decision, and the court finds the issues are presented in concrete and clean-cut form. Furthermore, withholding judicial consideration in the case would not remedy (and might prolong) the injuries Winyah has alleged on behalf of its members. Moreover, defendants have not cited any particular undue hardship they would suffer should this case go forward. Accordingly, Winyah's claims are ripe, and the court denies defendants' motion to dismiss under Rule 12(b)(1).

II.

As for defendants' motion to dismiss under Rule 12(b)(6), the court has reviewed the record and the parties' arguments under the governing standard. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarrantano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In considering the motion, the court construes the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted). Taking the allegations in Winyah's complaint and all reasonable inferences drawn therefrom as true, Winyah has "nudged [its] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.[3] Accordingly, the court denies defendants' motion to dismiss under Rule 12(b)(6). Whether the claims will survive defendants' inevitable motion for summary judgment is an issue for another day.

---

[3] Because the court concludes that Winyah states a claim, the court rejects defendants' argument that Winyah's notice of intent to sue is deficient. See [D.E. 12] 29–30.

In opposition, defendants argue that even if Winyah has alleged plausible claims under the Clean Water Act, numerous defenses preclude Winyah's lawsuit as a matter of law. The court rejects defendants' arguments. As for defendants' argument that the "permit shield" defense in 33 U.S.C. § 1342(k) bars Winyah's suit, see [D.E. 12] 22–24, the permit shield defense only applies if defendants are in compliance with the express terms of a valid NPDES permit. See Ohio Valley Env't Coalition, 845 F.3d at 142–43; Piney Run, 268 F.3d at 259. Taking Winyah's allegations and the reasonable inferences drawn therefrom as true, defendants are not in compliance with their NPDES permit. Thus, the permit shield does not bar Winyah's suit at this stage. Should discovery show that defendants are immune from liability under 33 U.S.C. § 1342(k), defendants may again raise the permit shield defense.

Next, defendants argue they have immunity under their brownfields agreement. See [D.E. 12] 24–25. Under North Carolina law, a party under a brownfields agreement is not liable for additional remediation of a site beyond what the agreement specifies so long as, among other requirements, that party "is complying with the brownfields agreement." N.C. Gen. Stat. § 130A-310.33(a). Defendants' brownfields agreement specifies that it "does not waive any applicable requirement to obtain a permit, license or certification, or to comply with any and all other applicable law." [D.E. 1-1] 204–05. Taking Winyah's factual allegations and the reasonable inferences drawn therefrom as true, defendants' brownfields agreement does not shield them from liability for the same reasons the permit shield defense does not apply. If discovery shows the agreement makes defendants immune to some portion of the relief Winyah seeks, defendants may again raise this agreement as a defense to liability.

Defendants contend the primary jurisdiction doctrine precludes this lawsuit. See [D.E. 12] 25–28. The doctrine of primary jurisdiction allows a court to dismiss without prejudice or stay

9

proceedings so that parties can seek review from an administrative agency when a case "contain[s] some issue within the special competence of an administrative agency." Reiter v. Cooper, 507 U.S. 258, 268 (1993); see Smith v. Clark/Smoot/Russell, 796 F.3d 424, 431 (4th Cir. 2015). The doctrine's purpose is to "tak[e] advantage of agency expertise and refer[] issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." Smith, 796 F.3d at 431. It applies when "federal litigation raises a difficult, technical question that falls within the expertise of a particular agency." Piney Run, 268 F.3d at 262, n.7. Whether to refer a decision to an administrative agency is discretionary. See Envt'l Tech. Council v. Sierra Club, 98 F.3d 774, 789 n.24 (4th Cir. 1996); Yadkin Riverkeeper, Inc. v. Duke Energy Carolinas, LLC, 141 F. Supp. 3d 428, 449 (M.D.N.C. 2015).

The primary issues in this case revolve around the interpretation and application of an NPDES permit. See, e.g., [D.E. 12] 27. Courts interpret NPDES permits according to ordinary principles of contract interpretation. See Ohio Valley, 845 F.3d at 138–139; Piney Run, 268 F.3d at 269. Applying the principles of contract interpretation to a legal document and then resolving remedial questions based on the rights and obligations in that legal document are not issues within the special competence of an administrative agency. Thus, the primary jurisdiction doctrine does not apply. See, e.g., Yadkin Riverkeeper, 141 F. Supp. 3d at 449–51.

Finally, defendants contend that the addition of Condition A(7) to their NPDES permit was part of a "minor modification" that otherwise did not affect the permit's terms. The court is not required to accept that legal conclusion. See, e.g., Giarratano, 521 F.3d at 302. Change in ownership may be a minor modification when, inter alia, "the Director determines that no other change in the permit is necessary." 40 C.F.R. § 122.63(d); see 40 C.F.R. § 122.61; 15A N.C. ADMIN. CODE 2H.0143(31). Taking the allegations in the complaint and all reasonable inferences drawn

therefrom as true, Winyah plausibly alleges that the North Carolina Department of Environmental Quality added Condition A(7) precisely because it thought changes to the permit might be necessary based on the new owners' use of the site. At this stage of the case, the court need not decide whether the change in ownership is a "minor modification," and if it is, what effect that conclusion has on Winyah's claims. Accordingly, the court denies defendants' motion to dismiss under Rule 12(b)(6).

III.

In sum, the court DENIES WITHOUT PREJUDICE defendants' motion to dismiss [D.E. 11], DENIES plaintiff's motion to strike [D.E. 15], and DENIES as moot plaintiff's motion to file a surreply [D.E. 15]. The parties SHALL confer and file a discovery plan pursuant to Federal Rule of Civil Procedure 26.

SO ORDERED. This _10_ day of January, 2022.

JAMES C. DEVER III
United States District Judge